VOGT *v.* GENERAL · NECESSITIES CORPORATION.

1. TRUSTS—CORPORATIONS—BURDEN OF PROOF—RECEIVERS.
   President of insolvent corporation and others claiming that certain corporate fund in president's hands is trust fund for payment of particular corporate obligation, as against right of corporation's receivers to said fund, have burden of establishing facts impressing said fund with trust.

2. SAME—ESTABLISHING TRUST.
   Efforts of president of insolvent corporation to have its creditor discount obligation before maturity, and his declaration that he had money with which to make payment, *held*, insufficient to establish trust.

3. SAME—ACTION BY DIRECTORS NECESSARY TO ESTABLISH TRUST.
   Action by board of directors was necessary to accomplish allocation and severance of certain corporate fund and its segregation as then present devotion thereof to payment of particular corporate obligation, in order to impress said fund with trust.

4. SAME—EQUITABLE LIEN—EQUITABLE ASSIGNMENT.
   Representation by president of corporation that certain loan can or will be paid out of avails of·sale of certain corporate property is insufficient to subject said avails, or any part thereof, to equitable lien or constitute equitable assignment.

Appeal from Wayne; Chenot (James E.), J.  Submitted January 17, 1933.  (Docket No. 12, Calendar No. 36,635.)  Decided April 4, 1933.  Rehearing denied June 5, 1933.

Receivership proceedings by Ben F. Vogt and others against General Necessities Corporation, a Michigan corporation.  On petition of Union Guardian Trust Company and another, receivers, to declare David A. Brown in contempt for failure to turn over alleged corporate funds.  Madison Investment Corporation, a Michigan corporation, in-

tervened as a third-party claimant to the fund. From decree for receivers, defendant Brown and intervener appeal. Affirmed.

*Beaumont, Smith & Harris* (*Thomas B. Moore* and *Richard W. Larwin,* of counsel), for receivers.

*William Henry Gallagher,* for defendant Brown.

*Butzel, Levin & Winston* (*Edward D. Quint* and *Carl L. Whitchurch,* of counsel), for intervener.

WIEST, J. This is a proceeding, in behalf of the receivers of the General Necessities Corporation, to recover moneys in the hands of defendant David A. Brown and claimed to belong to the corporation. Defendant David A. Brown was president of the General Necessities Corporation. In April, 1928, the Necessities Corporation borrowed $75,000 from the Madison Investment Corporation. Mr. Brown indorsed the notes given for this loan, and, as security, executed a trust mortgage to the Guardian Trust Company, covering real property owned by him. When the indebtedness was due, an extension of time and an increase of $25,000, for the benefit of Mr. Brown, was desired, and Mr. Brown again gave a mortgage on his property to secure the loan of $100,000, evidenced by a series of notes, payable over a period of one year. It is claimed that he did this under an agreement with the directors of the Necessities Corporation that the loan would be repaid out of a prospective sale of the ice cream plant, and the proceeds from such sale would be placed in his hands for that purpose. The ice cream plant of the Necessities Corporation was sold to the Borden Company, and the purchase price was paid in stock of the Borden Company, having a market value, it is

claimed, of $650,000. The Borden Company stock was placed in the hands of Mr. Brown, who pledged the same with a New York bank for a loan of $300,000 to the Necessities Corporation. Sales of the pledged stock were authorized and made, and the loan from the bank was finally satisfied. This left to the Necessities Corporation, out of the Borden Company stock, the sum of $56,378.26, and Mr. Brown received that sum from the New York bank on March 17, 1930, and claims right to hold the amount here involved for the purpose of paying the Madison Investment Corporation's loan to the Necessities Corporation, and relieve his property from the mortgage securing that loan, as well as his personal liability as an indorser of the notes evidencing the loan. Two of such notes of $4,000 each matured in March and April, 1930, and were paid out of the fund held by Mr. Brown.

April 28, 1930, receivers were appointed for the General Necessities Corporation, qualified as such, and, on April 30, 1930, demanded of Mr. Brown that he turn over to them, as such receivers, the money in his hands, derived from sale of the Borden Company stock. Mr. Brown refused to do so, and, September 23, 1930, on petition of the receivers, the court ordered Mr. Brown to show cause why he should not be adjudged guilty of contempt of court in not paying the money to the receivers, as previously ordered by the court. Thereupon the Madison Investment Corporation intervened and petitioned the court to adjudge the fund to be held in trust by Mr. Brown under an equitable lien for payment to it, and that it be so ordered paid. Mr. Brown, in answer to the order to show cause, set forth in substance what we have before stated, and admitted all claims set up in the petition of the

Madison Corporation. Defendant Brown prosecutes an appeal from a decree ordering him to pay the fund, now amounting to $40,608.36, to the receivers of the Necessities Corporation within a specified time or stand adjudged guilty of contempt. The Madison Investment Corporation prosecutes an appeal from the denial of its claim to the fund. The appeals have been consolidated and present the issues of whether the Necessities Corporation segregated the fund and placed it in the hands of Mr. Brown, as trustee, to pay on the corporate obligation to the Madison Corporation, or whether the fund is subject to an equitable lien in behalf of intervener.

It is contended by appellants that the agreement between Mr. Brown and the Necessities Corporation, to the effect that proceeds from sale of the ice cream plant would be applied in payment of the Madison Investment Corporation loan was established by the evidence, and the trial judge was in error in his finding to the contrary. Upon this issue all other questions hinge. No corporate action appears in the minutes of directors' meetings.

Until Mr. Brown learned of the proceeding for appointment of the receivers, the fund was on deposit in a New York bank to the credit of the Necessities Corporation and its withdrawal check. Upon learning of the proceeding for appointment of the receivers, Mr. Brown, from New York, telephoned the assistant treasurer of the Necessities Corporation to countersign two checks and mail them to him at the New York bank, stating that he wanted to pay the Madison Corporation. Mr. Brown filled out the checks to his own order and drew the money here involved. Up to that time there had been no segre-

gation of the funds for trust purposes, nor any recognition of such purpose, but rather the contrary.

It would seem that ordinary business acumen should have prompted some more permanent memorial of corporate action than mere memory of individuals. The burden of establishing facts impressing the fund with a trust was upon the claimants of such a result. Such a trust, in opposition to the otherwise clear right of the receivers, is not to be lightly inferred.

Mr. Brown had been liberal in pledging his personal liability in behalf of the corporation by indorsement of its paper and mortgaging his property for the same purpose, and he continued to do so over remonstrances of some of his business associates. Efforts by Mr. Brown to have the Madison Corporation discount the obligation of the Necessities Corporation before maturity, and his declaration that he had the money from sale of the Borden stock with which to make payment, did not establish a trust. The fund was on deposit as money of the corporation, and Mr. Brown could not constitute it a trust fund and make the Madison Corporation the beneficiary by any statements he might make. It required action by the board of directors of the Necessities Corporation to accomplish allocation and severance of this fund and its segregation as a then present devotion thereof to the payment of the obligation of the corporation to the Madison Corporation.

We are satisfied that at directors' meetings it was talked that, from the proceeds of the sale of the ice cream plant, the mortgage on the plant, taxes, pressing obligations, and the Madison loan could and should be paid, and that Mr. Brown, who dominated the board, should take the Borden stock and

pay all such obligations. But this was no more than ordinary corporate finance management, for such was the purpose in selling the ice cream plant.

The following quotations of testimony are from intervener's abstract. The secretary of the Necessities Corporation testified that:

"I had a memorandum of this (obligation to be paid out of the money from the Borden stock) along with the other resolutions and I spoke to Mr. Brown about incorporating that in the minutes. I said it would be a good thing to have it there as part of the transaction. He told me, however, to forget about that. That he preferred not to have it in the minutes, so I let it go."

Harry Z. Brown, a director, testified:

"It was agreed that David Brown was to keep the proceeds of the sale (Borden) in his possession. He was to set aside a certain portion of the stock to take care of the Madison loan. The purpose in setting aside a portion of the stock to pay the loan with was to assure Mr. Brown that the loan would be paid."

Mr. Nugent, assistant treasurer and accountant, and also director of the Necessities Corporation, testified:

"After it was figured out what this stock (Borden) would bring, Mr. Brown asked me for a detail of General Necessities liabilities. I do not recall having a detailed statement of liabilities at the meeting. I do not recall that there was a discussion of how the proceeds of the Borden stock would be used in the retirement of various of the company's obligations. I do not recall any detail like that. It might have been done without my carrying it in my mind. * * * I do not recall any understanding or agreement whereby the Madison loan was to

be repaid out of the proceeds of the sale of the ice cream plant, at any directors' meeting or outside of any directors' meeting.''

Harry J. Redwood, also a director, testified:

''I was present in May, 1929, when the $100,000 loan was authorized. There was no arrangement, or agreement respecting that loan by me or anyone in my presence that is not recorded in the minutes of that meeting. * * *

''I recall the meeting of July 5, 1929. There was no discussion at that meeting that the proceeds from the sale of the Borden stock which we were to receive in payment of the ice cream plant was to be set aside or held in trust by David A. Brown for the repayment of himself because of his indorsement of the Madison loan or that the Madison loan was to be paid out of the proceeds of that stock.''

On cross-examination he said:

''I would not undertake on my oath to say that my memory is right about Brown and others not having taken part in a discussion of where this money would go. There were discussions in which I took part as to where this money would go.''

The testimony of Harry C. Haze, also a director, was of like import.

Counsel for the Madison Corporation claim that:

''When respondent (Brown), on behalf of General Necessities Corporation, agreed that intervener's loan would be repaid out of the proceeds of the contemplated sale of the ice cream plant, and that a portion of such proceeds would be set aside for that purpose, an interest vested in intervener in the proceeds of the sale of the plant. The lien attached to the proceeds when they came into existence. The interest of intervener in the fund was not dependent

on performance of the agreement by General Necessities Corporation to set aside a portion of the proceeds."

Mr. Brown, without corporate authorization, could not fasten an equitable lien upon corporate assets, present or prospective. We find nothing upon which to base an equitable lien. The case appears to have been an instance of a corporation in financial difficulty, and, to meet pressing obligations, sold its ice cream plant in order to obtain money to pay many of its past-due debts and to be prepared to pay as well its debt to the Madison Corporation when due. We are not willing to hold that a representation by the president of a corporation that a loan can or will be paid out of avails of a sale of corporate property subjects the avails, or any part thereof, to an equitable lien or constitutes an equitable assignment.

We are unable to find that the money, ordered paid to the receivers by Mr. Brown, was duly segregated by corporate action as a trust fund for payment of the corporate obligation to the Madison Investment Corporation.

Decree in the circuit is affirmed, with costs against both appealing defendants.

McDonald, C. J., and Clark, Potter, Sharpe, North, and Fead, JJ., concurred. Butzel, J., did not sit.